King Athletic Goods Company *v.* Redevelopment Authority, Appellant.

Argued April 19, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James D. Crawford,* with him *Richard D. Malmed* and *Randall E. Ellington,* for appellant at No. 81 and appellee at No. 92.

*Joseph R. Livesey,* with him *Kates, Livesey & Edelstein,* for appellants at No. 92 and appellees at No. 81.

OPINION BY MR. JUSTICE EAGEN, July 1, 1974:

On August 2, 1968, the Redevelopment Authority of the City of Philadelphia [The Authority] filed a declaration of taking in the Court of Common Pleas of Philadelphia, for the area described as Callowhill East Urban Redevelopment Area. Included in this condemnation was a property located at 434-436 North Third Street, Philadelphia, which King Athletic Goods Company and Pro Sporting Goods Company both occupied and used in the manufacture and sale of athletic goods and equipment. [For convenience these businesses will be referred to herein as one, and the two companies will be referred to as King]. However, in its business King also occupied and used a property at 412-416 North Third Street, Philadelphia, which premises were not included in the condemnation. King filed preliminary objections to the declaration of taking alleging it was void because, inter alia, it excluded the premises at 412-416 North Third Street which was a necessary part of its business operation.[1]

To resolve the dispute, King and The Authority entered into a written agreement on December 2, 1968, "Terminating Litigation and Making Provisions for Sundry Actions." The essence of this agreement was

---

[1] It is irrelevant for our purpose whether preliminary objections were the proper means by which King should attack The Authority's condemnation on this ground.

that the property at 434-436 North Third Street and that at 412-416 North Third Street were to be treated as if both "had been condemned by the Authority." The agreement also provided that the "moving expenses"[2] [moving of King's personal property to a new location] and the expenses of disconnection, removal and reinstallation of King's machinery, equipment and fixtures[3] were to be processed the same as if both were "regular and ordinary moving costs."[4]

Subsequently, King obtained a relocation site at 2615 Hunting Park Avenue in Philadelphia. On April 22, 1969, after extensive correspondence between the attorney representing King and The Authority, King submitted to The Authority three bids for the moving of its "personal property" to the new location. The lowest bid was submitted by Louderback-North American, Inc. [Louderback]. On May 12th, King's attorney wrote The Authority asking its approval for King to move to the new location without first obtaining the required bids for moving its equipment, machinery and fixtures. The letter stated that King was in the process of obtaining these bids "from general contractors" and the bids should be received "within the next few days";

---

[2] The Act of June 22, 1964, Special Session, P. L. 84, Art. VI, §610, 26 P.S. §1-610 [now repealed] [the total act is commonly known as the Eminent Domain Code, and will be so referred to]. This section provides for the "reasonable moving expenses for personal property other than machinery, equipment or fixtures . . . ."

[3] Id. §608, 26 P.S. §1-608 [now repealed]. This section provides for the reasonable moving expenses of machinery, equipment or fixtures that are not part of the realty. See discussion of this section, infra at p. 7.

[4] The procedure regularly followed by The Authority in connection with "moving costs" is to require the claimant to submit three bids to The Authority. The Authority then obtains an additional bid from a "first class mover" and from the four bidders selects the one to perform the work. The successful bidder is paid directly by The Authority.

that it "was necessary to immediately vacate the premises 416 North Third Street"; that King was willing to pay Louderback directly and after this payment and "approval of the general contracting work, they would look for reimbursement from The Authority for that which they paid to Louderback." On May 15th, The Authority wrote directly to Louderback saying it "had received its estimate" and Louderback was authorized "to perform the moving." Louderback commenced the moving on May 24, 1969, which continued until June 4th, when it was terminated by King. As of June 4th, a substantial part of the moving had been accomplished, but part of King's inventory, machinery, equipment and fixtures still remained at the old location.

On June 23, 1969, King finally submitted three bids to The Authority for the moving of its machinery, equipment and fixtures. However, The Authority found certain problems with the bids and notified King of these general questions, but not of the specifics. On June 27th, King's attorney wrote to The Authority and demanded a resolution of the controversy, and suggested that if one was not immediately forthcoming, King would be forced to finance the relocation costs and seek reimbursement from The Authority. In a letter dated July 3rd, King's attorney notified The Authority that any further delay was intolerable, and he was instructing his clients to contract on its own for the moving and reinstallation of its machinery, equipment and fixtures. Despite this notification, King on July 29, 1969, through its attorney, submitted three revised bids to The Authority for the moving and relocation of the machinery, equipment and fixtures to the new business address.[5]

When no resolution of the controversy ensued, King filed a complaint in equity on September 26, 1969, al-

_____
[5] These bids were higher in amount than those originally submitted, because they included items not included in the initial bids.

leging The Authority was delaying King's moving to the new location by arbitrarily refusing to approve one of the bids it submitted for the relocation and reinstallation of its machinery, equipment and fixtures. In this complaint, King requested the court to order The Authority to comply with the agreement of the parties entered into on December 2, 1968, more specifically to order The Authority to authorize and pay for the moving of King's machinery, equipment and fixtures to its new business location. Damages were also requested from The Authority for the loss incurred by King as a result of the delay in the moving.

On October 13, 1969, King entered into a contract with Keystone Construction Company to perform the work necessary for the reinstallation of its machinery, equipment and fixtures at 2615 Hunting Park Avenue. Louderback then resumed the moving interrupted on June 4th. The moving was completed in January 1970.

The trial ensued in June 1972, King requested damages totalling $245,000. This included the money King had expended in the relocation and reinstallation of its machinery, equipment and fixtures, plus the amount allegedly lost in its business operation from June 4, 1969, to January 1970, due to the delay in the moving and re-establishment of its facilities at the new location. Subsequently, the chancellor entered an adjudication and decree nisi awarding King damages in the amount of $67,359.47, covering the money it had expended for the relocation and reinstallation of its machinery, equipment and fixtures. The chancellor refused to award King any damages for the losses allegedly suffered in its business operation between June 4, 1969, and January 1970, because he concluded The Authority was not "solely responsible for the delay" in the moving to the new business location. Both sides filed exceptions to the adjudication and decree nisi. A court en banc later dismissed these exceptions and

made the decree nisi final. Both King and The Authority filed an appeal in this Court.[6]

King assigns as error the refusal of the trial court to award it damages for the losses suffered in its business operation through the delay in moving to the new business location. While The Authority asserts several assignments of error, we need discuss only one because it is dispositive of both appeals.

The agreement entered into by King and The Authority on December 2, 1968, upon which King's claim must rest or fall provided as follows: "The Authority pay and/or reimburse KING ATHLETIC GOODS COMPANY AND PRO SPORTING GOODS COMPANY for relocation expenses incurred by them upon their vacation from Premises 434-36 North 3rd Street, Philadelphia, Pennsylvania and 416 North 3rd Street, Philadelphia, Pennsylvania, *to the same extent as if both said premises had been condemned by the Authority.*" [Emphasis supplied.]

In our view, the intent of the agreement, as expressed in the foregoing provision, was to grant King the benefit of the Eminent Domain Code "to the same extent as if both said premises had been condemned by

---

[6] Under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, art. IV, §402, 17 P.S. §211.402, appellate jurisdiction of "[a]ll proceedings arising under the Eminent Domain Code" [Act of June 22, 1964, P. L. 84, as amended, 26 P.S. §§1-101 et seq.] is in the Commonwealth Court. While the instant action reached the trial court through a "complaint in equity", the action is clearly ancillary to proceedings arising under the Eminent Domain Code, and, hence, appellate jurisdiction is in the Commonwealth Court. However, since no objection to our entertaining jurisdiction has been entered by any of the parties, we will in the interests of an expeditious disposition and judicial economy entertain jurisdiction. See Section 503 of the Appellate Court Jurisdiction Act of 1970, supra, §503, 17 P.S. §211.503. However, we caution the members of the bar against considering this action as the course we will follow in like situations in the future.

the Authority."[7]  And the Eminent Domain Code expressly limited the amount a claimant may receive to cover the cost of removing machinery, equipment and fixtures from the condemned site to a new location to $25,000.[8]  Hence, as a matter of law, King's recovery may not exceed this amount.

The decree is vacated, and the record is remanded for the purpose of entering a decree in accordance with this opinion.  Each side to pay own costs.

Mr. Justice MANDERINO dissents.

---

[7] This interpretation is supported by the fact that King's preliminary objections were founded upon the argument that it was inequitable for The Authority to condemn only one of their two "united" premises.  Moreover, the relief there requested by King was for The Authority to condemn both premises.

[8] The Eminent Domain Code, §608, 26 P.S. §1-608 provided: "Section 608. Removal Expenses.—The person having legal possession of machinery, equipment or fixtures on the condemned property, not forming part of the realty, including a tenant not entitled to any proceeds of the condemnation, if under the lease the tenant has the right to remove said machinery, equipment or fixtures, shall be entitled, as damages, to the reasonable expenses of the removal, transportation and re-installation of such machinery, equipment or fixtures. *Reasonable expenses* under the provisions of this section *shall not exceed twenty-five thousand dollars* ($25,000) and in no event shall such expenses exceed the market value of the machinery, equipment and fixtures." [Emphasis supplied.]

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent and would transfer the appeal to the Commonwealth Court.  Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. V, § 503(b), 17 P.S. § 211.503(b) (Supp. 1974).  This appeal involves a proceeding arising under the Eminent Domain Code, and appellate jurisdiction of "[a]ll proceedings arising under the Eminent Domain Code" is properly in the Commonwealth Court.  Id. art. IV, § 402(6), 17 P.S. § 211.402(6) (Supp. 1974).